AO 91 (Rev. 02/09) Criminal Complaint

# United States District Court
### for the
### Western District of New York

United States of America

**v.**

Hector Carattini a/k/a Lagrima, Michael Perez, Juan Oliverias-Arbelo a/k/a Mikey, Mark Gonzalez, Adalberto Cruz, Maikel Gonzalez, Alberto Fernandez, Raymond DeJesus, Hector Huertas a/k/a Hector Rivera and Kristie Boncore

*Defendants*

Case No. 15-M- 116

(FILED UNDER SEAL)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

Between in or about the Fall of 2013 and on or about June 18, 2015, the exact date being unknown, through the present, in the County of Erie in the Western District of New York, the defendants, **Hector Carattini a/k/a Lagrima, Michael Perez, Juan Oliverias-Arbelo a/k/a Mikey, Mark Gonzalez, Adalberto Cruz, Maikel Gonzalez, Alberto Fernandez, Raymond DeJesus, Hector Huertas a/k/a Hector Rivera**, did knowingly, willfully and unlawfully combine, conspire and agree together and with others known and unknown to possess with intent to distribute and to distribute 100 grams or more of mixtures and substances containing heroin, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 846, 841(a)(1) and 841(b)(1)(B).

Between in or about the Fall of 2013 and on or about June 18, 2015, in the Western District of New York, the defendants, **Hector Carattini a/k/a Lagrima, Michael Perez, Juan Oliverias-Arbelo a/k/a Mikey, Mark Gonzalez, Adalberto Cruz, Maikel Gonzalez, Alberto Fernandez, Raymond DeJesus, and Hector Huertas a/k/a Hector Rivera** did knowingly, intentionally and unlawfully possess with intent to distribute and to distribute mixtures and substances containing heroin, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(B).

This Criminal Complaint is based on these facts:

☒  Continued on the attached sheet.

_____
*Complainant's signature*

CLINTON CALLOWAY, JR.
TASK FORCE OFFICER
DRUG ENFORCEMENT ADMINISTRATION
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  _September 28, 2015_

_____
*Judge's signature*

JEREMIAH J. McCARTHY
UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

City and State:  _Buffalo, New York_

2

## AFFIDAVIT

STATE OF NEW YORK    )
COUNTY OF ERIE          )          ss:
CITY OF BUFFALO        )


**CLINTON CALLOWAY, JR.,** being duly sworn, deposes and says:


1.          I am a Task Force Agent with the Drug Enforcement Administration ("DEA")
and as such, I am an "investigative or law enforcement officer" of the United States who is
empowered by law to conduct investigations of and to make arrests for offenses enumerated in
the Comprehensive Drug Abuse Prevention and Controlled Substance Act of 1970, Title 21 of
the United States Code (USC), as amended. I have been a Task Force Agent with the DEA
since November, 2001. Prior to my assignment to the D.E.A., I was assigned as a Narcotics
Investigator for six years with the New York State Police. I have been employed by the New
York State Police as a sworn law enforcement officer since March of 1987. As part of my
assignment with the DEA, I successfully completed DEA basic task force agent training, an
intensive course covering all aspects of drug enforcement. During my law enforcement career, I
have participated in numerous investigations targeting individuals engaging in the trafficking
and distribution of narcotics. Based on my training, experience in law enforcement, and
conversations with DEA Special Agents (SA's), Task Force Officers (TFO's), and other law
enforcement officers, I am familiar with how controlled substances are cultivated,
manufactured, processed, packaged, distributed, sold and used by individuals involved in drug
trafficking activities, and how drug traffickers use electronic communications to facilitate their

illegal activities. As a result of my training and experience, I am familiar with the language, conduct and customs of people engaged in narcotics transactions conspiracies. My investigative experience, as well as the experience of other law enforcement agents who are participating in this investigation, serve as the basis for the opinions and conclusions set forth herein. I have assisted in investigations that involved monitoring and recording of court-authorized Title III interceptions. I have been involved in this investigation since its inception, as discussed in greater detail below.

2.      This investigation was based on intercepted telephone conversations, analysis of records, surveillance, witness interviews, information provided by reliable confidential sources, consensual recordings, pen registers, telephone toll records, search warrants, and information from the DEA and other federal, state and local law enforcement agencies.

3.      This Affidavit is in reference to Grand Jury Indictment and Arrest Warrants 15 CR 122 which were filed in United States District Court, Western District of New York on June 11, 2015, charging DANIEL MOLINA-RIOS a/k/a Ponce, ORLANDO RIOS a/k/a Fifo, JOSE ANDUJAR AND LUIS MONTANEZ a/k/a Wichy in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B) (possession with intent to distribute, and to distribute, 100 grams or more of a mixture and substance containing heroin, and 846 (conspiracy to commit a controlled substance felony). MOLINA-RIOS, RIOS and ANDUJAR were arrested on June 18, 2015. MONTANEZ remains a fugitive.

4.      This Affidavit is submitted in support of a criminal complaint charging additional associates of MOLINA-RIOS, RIOS, ANDUJAR and MONTANEZ as follows:  HECTOR CARATTINI a/k/a LAGRIMA, MICHAEL PEREZ, JUAN OLIVERIAS-ARBELO a/k/a Mikey, MARK GONZALEZ, ADALBERTO CRUZ, MAIKEL GONZALEZ, ALBERTO FERNANDEZ, RAYMOND DEJESUS, HECTOR HUERTAS a/k/a HECTOR RIVERA, and KRISTIE BONCORE, with violating United States Code, Sections 841(a)(1) and 841(b)(1)(B) (possession with intent to distribute, and to distribute, 100 grams or more of a mixture and substance containing heroin, and 846 (conspiracy to commit a controlled substance felony).

5.      Since the fall of 2013, the DEA, the New York State Police Community Narcotics Enforcement Team (CNET) and the City of Buffalo Police Department (BPD) Narcotics Unit (the investigative team) have been and continue to conduct an investigation of the Daniel MOLINA-RIOS Drug Trafficking Organization (DTO).  The investigation indicated that the MOLINA-RIOS DTO acquired kilogram quantities of heroin for distribution in the Buffalo, NY metropolitan area which it obtained from Sources of Supply (SOS) in New York City, NY.  This heroin was distributed through multiple street level distributors primarily in Buffalo, NY.  The MOLINA-RIOS DTO was led by Daniel MOLINA-RIOS and Orlando RIOS.

6.      During March of 2014, a Confidential Source provided the investigative team with cellular telephone number 716-819-6155 for an unidentified dealer working for the MOLINA-RIOS DTO.  Law enforcement utilized undercover police officers to contact this

3

number and conducted a series of controlled purchases of heroin from the MOLINA-RIOS DTO. Investigators determined that this particular phone was shared among multiple members of the MOLINA-RIOS DTO to distribute heroin. During the course of the undercover phase of this investigation, the investigative team identified five additional cellular phones shared and used by members of the MOLINA-RIOS DTO to distribute heroin. These members had been identified as HECTOR CARATTINI a/k/a LAGRIMA, MICHAEL PEREZ, JUAN OLIVERIAS-ARBELO a/k/a Mikey, MARK GONZALEZ, ADALBERTO CRUZ, MAIKEL GONZALEZ, ALBERTO FERNANDEZ, RAYMOND DEJESUS and HECTOR HUERTAS a/k/a HECTOR RIVERA. The above MOLINA-RIOS DTO telephones included the target telephone 716-465-2951 (Target Telephone 1, hereinafter TT1), and the predecessor MOLINA-RIOS DTO telephones 716-812-3428, 716-819-6155, 716-228-6682 and 716-308-5673.

7.    The investigative team also identified cellular telephone, 716-381-0131 as being utilized by Orlando RIOS. The investigative team obtained information from a BPD missing persons report filed by Orlando RIOS in May 2014. At that time, Orlando RIOS provided police with telephone number 716-381-0131 as a contact number in case police needed to reach RIOS regarding the investigation. Since May 2014, investigators issued subpoenas to collect toll data for the involved telephones. Upon examining toll records, investigators uncovered frequent communication between telephone 716-381-0131 and those telephone numbers identified by investigators as being used by HECTOR CARATTINI a/k/a LAGRIMA, MICHAEL PEREZ, JUAN OLIVERIAS-ARBELO a/k/a Mikey, MARK GONZALEZ, ADALBERTO CRUZ, MAIKEL GONZALEZ, ALBERTO FERNANDEZ, RAYMOND

DEJESUS and HECTOR HUERTAS a/k/a HECTOR RIVERA  during the undercover purchases.

8.      On March 23, 2015, Senior United States District Judge William M. Skretny of the Western District of New York, authorized the interception of wire communications of ORLANDO RIOS a/k/a Fifo, HECTOR CARATTINI a/k/a Lagrima, HECTOR HUERTAS, RAYMOND DEJESUS, JUAN OLIVERIA-ARBELO a/k/a Mikey, MICHAEL PEREZ, JOSE ANDUJAR, MARK GONZALEZ, MAIKEL GONZALEZ, and ADALBERTO CRUZ, over telephone number (716) 465-2951 (Target Telephone 1, TT1), for 30 days.

9.      On April 24, 2015, Judge Skretny authorized the continued interception of wire communications over Target Telephone 1, and authorized the interception of wire communications DANIEL MOLINA-RIOS a/k/a Ponce, ORLANDO RIOS a/k/a Fifo, HECTOR CARATTINI a/k/a Lagrima, HECTOR HUERTAS, RAYMOND DEJESUS, JUAN OLIVERIAS-ARBELO, MICHAEL PEREZ, JOSE ANDUJAR, MARK GONZALEZ, MAIKEL GONZALEZ, ADALBERTO CRUZ, STEVE MCKEEL, CRYSTAL SIMPSON, MATTHEW KOEHLER, and FNU LNU 6600,[1] FNU LNU 5159, FNU LNU 6473, FNU LNU 8520, FUN LNU 5168, FNU LNU 0897, FNU LNU 5065, FNU LNU 7314, FNU LNU 0193, FNU LNU 8343, FNU LNU 5954, FNU LNU 2786, FNU LNU 3612, FNU LNU 6959 and FNU LNU 0058, and others yet unknown, occurring over cellular

---

[1] "FNU LNU" stands for "first name unknown, last name unknown."  An unidentified interceptee will be referenced as "FNU LNU" followed by the last four digits of the telephone used by that individual.

telephone 716-256-8466, (Target Telephone 2, hereinafter TT2), utilized by JOSE ANDUJAR, for 30 days.

10.     On May 13, 2015, Judge Skretny authorized the interception of wire communications of DANIEL MOLINA-RIOS a/k/a Ponce, ORLANDO RIOS a/k/a Fifo, HECTOR CARATTINI, JUAN OLIVERIAS-ARBELO, JOSE ANDUJAR and MARK GONZALEZ, over telephone number 716-936-4373 (Target Telephone 3, hereinafter TT3), a telephone used by MOLINA-RIOS, for 30 days.

11.     It should be noted that **ADALBERTO CRUZ, MAIKEL GONZALEZ, ALBERTO FERNANDEZ, RAYMOND DEJESUS and HECTOR HUERTAS a/k/a HECTOR RIVERA were not intercepted during the Title III phase of the investigation, but all five either used TT1 (prior to Title III) or the predecessor telephones of the MOLINA-RIOS DTO to distribute heroin to the undercover officers and confidential informant(s).**

12.     The intercepted telephone conversations demonstrated that the MOLINA-RIOS DTO was led by DANIEL MOLINA-RIOS and ORLANDO RIOS and that this DTO distributed heroin in Buffalo.  MOLINA-RIOS had a network of distributors and associates with whom they met daily and to whom they distributed narcotics.  Many of MOLINA-RIOS' associates then distributed the narcotics to others.  The intercepted conversations show that MOLINA-RIOS controlled and managed all aspects of the DTO.  He supplied/replenished heroin to ANDUJAR, who oversaw the street level heroin distributors, including HECTOR CARATTINI, MICHAEL PEREZ, JUAN OLIVERIAS-ARBELO and MARK GONZALEZ.

These street level heroin distributors then distributed to other individuals including KRISTIE BONCORE.

## CONTROLLED HEROIN PURCHASES

### Hector CARATTINI A/K/A LAGRIMA

13.     Between June 18, 2014 and March 2, 2015, Law Enforcement utilized undercover officers to complete 14 controlled purchases of heroin from CARATTINI resulting in the seizure of 83 bags of heroin.  These purchases all occurred in the City of Buffalo, New York. The substance was subsequently field-tested or submitted to the Erie County Central Police Services Laboratory in which a positive reaction was received for the presence of heroin. CARATTINI communicated with the undercover officers using predecessor telephones 716-812-3428, 716-308-5673, 716-819-6155 and TT1.

### MICHAEL PEREZ

14.     Between August 28, 2014 and November 3, 2014, 2015, Law Enforcement utilized undercover officers to complete 2 controlled heroin purchases from PEREZ resulting in the seizure of 9 bags of heroin.  These purchases all occurred in the City of Buffalo, New York. The substance was subsequently field-tested or submitted to the Erie County Central Police Services Laboratory in which a positive reaction was received for the presence of heroin. PEREZ communicated with the undercover officers using predecessor telephone 716-812-3428.

15.     On December 23, 2014, while in the vicinity of Jersey Street and West Avenue in the City of Buffalo, the New York State Police Troop "A" Violent Felony Warrant Squad,

executed a New York State indictment warrant charging four counts of Criminal Sale Controlled Substance Third Degree and arrested Michael PEREZ. PEREZ was searched incident to arrest. Located in a pouch around PEREZ's waist were 73 bags of suspected heroin and $823.00 U.S. Currency.

### JUAN OLIVERIAS-ARBELO

16.    Between July 16, 2014 and January 27, 2015, Law Enforcement utilized undercover officers to complete 12 controlled heroin purchases from OLIVERIAS-ARBELO resulting in the seizure of 53 bags of heroin. These purchases all occurred in the City of Buffalo, New York. The substance was subsequently field-tested during each purchase in which a positive reaction was received for the presence of heroin. The heroin was then submitted to the Erie County Central Police Services Laboratory for analysis and safekeeping. OLIVERIAS-ARBELO communicated with the undercover officers using predecessor telephones 716-819-6155, 716-308-5673, 716-812-3428 and TT1.

### MARK GONZALEZ

17.    Between December 2, 2014 and January 22, 2015, Law Enforcement utilized undercover officers to complete 5 controlled heroin purchases from GONZALEZ resulting in the seizure of 28 bags of heroin. These purchases all occurred in the City of Buffalo, New York. The substance was subsequently field-tested during each purchase in which a positive reaction was received for the presence of heroin. The heroin was then submitted to the Erie County Central Police Services Laboratory for analysis and safekeeping. GONZALEZ communicated with the undercover officers using predecessor telephone 716-812-3428 and TT1.

**ADALBERTO CRUZ**

18.     On February 22, 2015, Law Enforcement utilized an undercover officer to complete one (1) controlled heroin purchases from CRUZ resulting in the seizure of 10 bags of heroin.   This purchase occurred in the City of Buffalo, New York.   The substance was subsequently field-tested in which a positive reaction was received for the presence of heroin. The heroin was then submitted to the Erie County Central Police Services Laboratory for analysis and safekeeping.   CRUZ communicated with the undercover officer using TT1.

**MAIKEL GONZALEZ**

19.     On January 29, 2015, Law Enforcement utilized an undercover officer to complete one (1) controlled heroin purchases from GONZALEZ resulting in the seizure of 6 bags of heroin.   This purchase occurred in the City of Buffalo, New York.   The substance was subsequently field-tested in which a positive reaction was received for the presence of heroin. The heroin was then submitted to the Erie County Central Police Services Laboratory for analysis and safekeeping.   GONZALEZ communicated with the undercover officer using TT1.

**ALBERTO FERNANDEZ**

20.     Between July 10, 2014 and September 16, 2014, Law Enforcement utilized undercover officers to complete 5 controlled heroin purchases from FERNANDEZ resulting in the seizure of 19 bags of heroin.   These purchases all occurred in the City of Buffalo, New York. The substance was subsequently field-tested during each purchase in which a positive reaction was received for the presence of heroin.   The heroin was then submitted to the Erie County

Central Police Services Laboratory for analysis and safekeeping.   FERNANDEZ communicated with the undercover officers using predecessor telephones 716-819-6155 and 716-812-3428.

21.     On January 15, 2015, at approximately 11:40 AM, Amherst Police Confidential Source CS-X-11, hereafter referred to as the CS, arrived at the Buffalo Resident Office (BRO) where plans were formulated for the CS to purchase a quantity of heroin from "GORDO", subsequently identified as Alberto FERNANDEZ.

22.     At 11:55 AM the CS placed a recorded telephone call to (716) 465-1127 in an attempt to contact FERNANDEZ to make arrangements for the purchase. The phone was answered by a male the CS believed to be FERNANDEZ. The CS requested to meet with the male on the phone and was given instructions to go to the area of Seneca St. which the CS knows to mean the area of Seneca and Bailey in Buffalo, NY.

23.     At approximately 12:00 PM, while at the Buffalo Resident Office, the CS was searched by officers with negative results. The CS was then equipped with a transmitter / recorder (Kel) and $200.00 in DEA Official Advanced Funds (OAF).

24.     At approximately 12:20 PM, officers reported that a blue minivan with a Hispanic male driver was parked in the lot of the Tim Horton's restaurant at Seneca and Bailey. This vehicle and individual matched the description of FERNANDEZ. The CS was driven to the area by officers. The CS observed the blue minivan and the individual operating it and identified

the vehicle and the occupant as FERNANDEZ. The CS was then let out on foot and walked towards the Tim Horton's. The CS placed a call to FERNANDEZ at (716) 465-1127 and advised that the CS was in the area and wanted instructions on where to meet. FERNANDEZ asked the CS how much the CS wanted and the CS replied the CS had $200.00 to which FERNANDEZ stated that he would have to go get it and would be right back.

25.     Officers reported that the blue minivan had a license plate of (NY) GUA-5195 and that the vehicle was leaving the area on Seneca St towards Bailey Ave. Surveillance then followed that vehicle to the area of 116 Fredro St. in Buffalo where the vehicle parked. FERNANDEZ then exited the vehicle and entered the front porch of 112 Fredro St at 12:40 PM.

26.     At approximately 12:49 PM, FERNANDEZ exited 112 Fredro St via the front porch and returned to the blue minivan. The minivan then pulled away and was followed by surveillance from Fredro St back to the Tim Horton's where surveillance observed the vehicle park on the east side of the building at 12:54 PM.

27.     The CS then approached the passenger side of the vehicle and entered the vehicle. After a very short time, the CS exited the vehicle and went back inside the Tim Horton's. Officers then picked up the CS who turned over twenty five (25) green envelopes of heroin and stated that the purchase had been made from FERNANDEZ and that FERNANDEZ was the only person in the vehicle. The CS was searched for contraband with negative results. A field

test was conducted on one (1) envelope with a positive result for the presence of heroin. The remaining heroin was submitted to the DEA Northeast Laboratory for analysis and safekeeping.

28.     On January 29, 2015, at approximately 11:00 AM, a Lackawanna Police Undercover Officer, hereafter referred to as the UC, arrived at the Buffalo RO where plans were formulated for the UC to arrange a purchase of heroin from individuals utilizing telephone number 716-465-1127 to facilitate their drug trafficking activities.

29.     At approximately 11:26 AM, the UC placed a text message to (716) 465-1127 to make arrangements to purchase an amount of heroin. The UC sent a text message stating, "Hey you around I want to come thru". The UC then received a reply text stating' "Yes". The UC then began exchanging a series of text messages and phone calls arranging to meet and conduct the purchase of heroin. The UC was instructed to go the McDonalds Restaurant located on Main St in Buffalo near Utica St.

30.     The UC was followed to the area of the McDonalds located at 1338 main St, Buffalo, NY 14209. Officers observed (NY) Reg. GUA-5195 parked in the parking lot of the McDonald's on the north side. This is the same vehicle utilized by "GORDO" during the course of a CS purchase on 01/15/2015. "GORDO" was subsequently identified as FERNANDEZ. A Hispanic Male wearing a brown jacket and a grey knit hat was standing outside the vehicle at the passenger front door which was open.

31.     The UC parked in a spot next to the driver's side of the blue van. The Hispanic male that was standing outside the blue van approached the UC vehicle and entered the front

passenger side of the UC vehicle. A negotiation was conducted between the UC and the Hispanic Male regarding the price per bundle of heroin. The UC requested to pay $80.00 per bundle and the male indicated that it would have to be $90.00 per bundle so that the male could make some money on the deal.

32.     Officers monitoring the Kel and could hear the UC and male negotiating the deal. The UC gave the male $360.00 in DEA OAF which the male counted and then exchanged for forty (40) wax envelopes of heroin bundled in four packages of ten.  The male then exited the UC vehicle and returned to the passenger side of the blue minivan and entered the front passenger seat. The UC then left the area followed by officers.

33.     After less than a minute, the Hispanic male that conducted the deal exited the blue minivan and went inside the McDonald's Restaurant. The blue minivan then exited the lot being driven by a Hispanic male driver. The minivan was followed from the area by surveillance units until it was stopped for a vehicle and traffic violation on Virginia St west of Elmwood in Buffalo by a NFTA Police marked unit. Officers requested that NFTA Police identify the driver.

34.     A NFTA Police Officer identified the driver of the vehicle as Alberto M. FERNANDEZ, DOB 06-12-1977, 85 Troupe St, Buffalo, NY. FERNANDEZ presented a Puerto Rico driver's license as identification. The observed that FERNANDEZ had a large amount of United States Currency on his person. The police officer noted that FERNANDEZ had a large amount of twenty dollar bills, several fifty dollar bills, and a one hundred dollar bill.

The officer photographed the fifty dollar bills and the hundred dollar bill and then returned the United States Currency to FERNANDEZ.

35.     Surveillance then met the UC who turned over forty (40) wax envelopes of heroin to the officers. A field test was conducted on one (1) envelope with a positive result for the presence of heroin. The UC indicated that the UC believed that the individual conducting the transaction was acting on the behalf of the driver, later identified as FERNANDEZ, of the blue minivan whom the UC could not see through the tinted windows.

36.     Officers obtained a copy of the photographed money from the NFTA officer for comparison against the money list of the United States Currency used for the UC purchase. Officers conducted the comparison and learned that the four fifty dollar bills and the one hundred dollar bill serial numbers matched showing that FERNANDEZ had in his possession the DEA OAF used in the UC purchase. Copies of the photographs and the DEA OAF were secured as evidence.

**RAYMOND DEJESUS**

37.     Between September 26, 2014 and October 12, 2104, Law Enforcement utilized undercover officers to complete 4 controlled heroin purchases from DEJESUS resulting in the seizure of 20 bags of heroin. These purchases all occurred in the City of Buffalo, New York. The substance was subsequently field-tested during each purchase in which a positive reaction was received for the presence of heroin.  The heroin was then submitted to the Erie County

Central Police Services Laboratory for analysis and safekeeping.  DEJESUS communicated with the undercover officers using predecessor telephone 716-812-3428.

38.     On January 22, 2015, Amherst Police Confidential Source CS-X-11, hereafter referred to as the CS, arrived at the Buffalo RO where plans were formulated for the CS to introduce an undercover officer (UC) to individuals utilizing telephone number 716-465-1127 for the purpose of purchasing a quantity of heroin from those individuals.

39.     At 12:07 PM the CS placed a text message to (716) 465-1127 to make arrangements for the UC officer to purchase an amount of heroin. The CS sent a text message stating, "Are you good? I'm working can I send a friend". The CS then received a reply text stating' "How much you need". The CS replied, "4Bs" meaning 4 bundles. The CS then received a reply stating, "Send him to Spahn". The CS replied, "He will call you when he gets there".

40.     At approximately 12:51 PM, the UC placed a recorded telephone call to 716-465-1127 and advised that the UC was on Spahn St. A Hispanic male answered the phone and the UC advised that the UC was in a grey van on Spahn St and the male advised the UC that he would be right there.

41.     At approximately 12:54 PM, Raymond DEJESUS arrived on Spahn driving a Honda Civic and parked behind the UC vehicle. DEJESUS then got into the UC vehicle and sold the UC 40 bags of heroin for $360.00 DEA OAF. A field test was conducted with a positive

result for the presence of heroin.  The remaining heroin was sent to the DEA Northeast Laboratory for analysis and safekeeping.

## HECTOR HUERTAS a/k/a HECTOR RIVERA

42.    Between September 12, 2014 and December 21, 2104, Law Enforcement utilized an undercover officer to complete four (4) controlled heroin purchases from HUERTAS resulting in the seizure of 16 bags of heroin.  These purchases occurred in the City of Buffalo, New York.  The substance was subsequently field-tested during each purchase in which a positive reaction was received for the presence of heroin.  The heroin was then submitted to the Erie County Central Police Services Laboratory for analysis and safekeeping.  HUERTAS communicated with the undercover officer using predecessor telephone 716-812-3428.

## INTERCEPTED COMMUNICATIONS

43.    The intercepted conversations discussed below show how HECTOR CARATTINI a/k/a LAGRIMA, MICHAEL PEREZ, JUAN OLIVERIAS-ARBELO a/k/a Mikey, MARK GONZALEZ, and KRISTIE BONCORE were involved in the drug-trafficking conspiracy, possessed heroin, and used telephones to distribute those drugs. The calls were intercepted over telephone numbers (716) 465-2951 (target telephone 1, TT1), (716) 256-8466 (target telephone 2, TT2) and (716) 381-0131.

## BASIS OF KNOWLEDGE OF YOUR AFFIANT IN REFERENCE TO DETERMINING THE AMOUNTS OF HEROIN CUSTOMERS AND SUPPLIERS DISCUSSED DURING THE COURSE OF INTERCEPTED TELEPHONE CALLS

44.     This investigation was initiated by narcotics investigators of the Buffalo Police Department and the New York State Police who received source information regarding a heroin distribution organization using a common telephone number to distribute heroin at the street level.

45.     As the investigation progressed, undercover officers from both BPD and the NYSP made in excess of 50 undercover purchases from various DTO members using the target telephone.  During the course of these purchases, the undercover officer was usually asked by the street level dealer how much the undercover wanted to purchase. The undercover officer would then simply state a number such as "four" or "six". When the undercover made that request to the dealer it always was in reference to a specific number of bags of heroin that the undercover officer wanted to purchase.

46.     Further, on April 17, 2015 an incoming telephone call to TT1 was intercepted from 716-957-4091 in which a female, later identified as Ashley SLAGHT arranged to make a purchase of heroin from the street level dealer. In that call the street level dealer asked, " How many ?" and SLAGHT replied, "13".  This meeting between the street level dealer and SLAGHT resulted in the arrest of SLAGHT by Lackawanna Police in which thirteen (13) individual bags of heroin were recovered.

47.     In other instances, intercepted telephone calls between TT1 and customers resulted in the customers attempting to negotiate better prices or the purchase of more heroin with limited funds. For example, on 04/21/2015 there was an incoming telephone call to TT1 from 716-418-6620 in which the customer asked the street level dealer," Can I get four (4) for 35.  Experience has shown that a single bag of heroin has a normal street sale value of ten dollars. Therefore, in the above example, when asking for 4 for 35 the customer would be referring to four bags at a discounted price of $35.00.

48.     Lastly, on 05/22/2015 there was an incoming telephone call to TT1 from 716-432-6959. In this call the customer told the street level dealer that she needs "two buns". The investigative team has interpreted that to mean that the customer needs two bundles of heroin which would consist of twenty bags.  Again on 04/23/2015 there is an incoming telephone call to TTI from 716-261-6865 in which the caller states the he need three "whole ones". The investigative team has interpreted this to mean that the customer needs three (3) bundles of heroin consisting of thirty bags.

49.     Based on the above referenced information, it is believed by the investigative team that when a customer asks for a specific number such as four, or six, or fifteen for example, they are referring to a specific number of individual bags.  If the customer wants to purchase bundle level quantities they either refer to the number specifically as bundles, buns, or whole ones.

50.     Later in the investigation telephone calls were intercepted between the street level dealers using TT1 and mid-level managers in the organization such as Jose ANDUJAR. The amounts being referenced in conversations were of bundles and not bags.

## STREET LEVEL MANAGERS

51.     Based on information obtained during the investigation, including surveillance, information from confidential sources and law enforcement agencies, and intercepted conversations, it was determined that MOLINA-RIOS managed a large-scale heroin distribution organization, and that MOLINA-RIOS conducted that unlawful activity at various locations throughout Buffalo, New York.   MOLINA-RIOS had a group of associates who assisted him in distributing heroin, including mid-level members ORLANDO RIOS and JOSE ANDUJAR.   They oversaw the street-level heroin distribution activities of: HECTOR CARATTINI a/k/a Lagrima, MICHAEL PEREZ, JUAN OLIVERIAS-ARBELO a/k/a Mikey and MARK GONZALEZ.   These individuals then distributed heroin to other individuals including:   KRISTIE BONCORE, who then distributed heroin to her own customers.  The following intercepted calls and events reflected each individual's role in this narcotics conspiracy.

## JOSE ANDUJAR (MID-LEVEL MANAGER) and MARK GONZALEZ (STREET LEVEL DEALER)

52.     On March 30, 2015, at approximately 2:01 p.m., TT1 placed an outgoing call to TT2, a telephone being used by JOSE ANDUJAR.  During this call, the following conversation occurred between MARK GONZALEZ and ANDUJAR in its entirety:

ANDUJAR: Hello

GONZALEZ: Hello. Look, I need, I need 17 and I am going to take a break to go eat.

ANDUJAR: Alright Papi. Go ahead.

Based on your affiant's experience with this investigation, your affiant believed that ANDUJAR, a member of the organization, is believed to be a mid-level manager, who distributed the heroin to the street dealers who used TT1. During this call, your affiant believed that when GONZALEZ said, "I need 17 and I am going to take a break to eat", he told ANDUJAR that he needed to be re-supplied with "17" bundles (170 bags) of heroin which he sold to the customers. Furthermore, based on the intercepted calls throughout the T-III investigation, certain heroin customers would order up to 8 bundles (80 bags) at a time. Therefore, it would be inconsistent for the street level dealers to have on hand only individual bags for resale or they would constantly be contacting ANDUJAR to be re-supplied which was not the case during this T-III. Your affiant believed that the street level dealers start the day off with multiple bundles of heroin for resale and when that supply had been depleted or near depletion they would re-up from ANDUJAR. In conclusion, your affiant believed the number "17" represented "17" bundles (170 bags) not "17" individual bags.

53.     On April 11, 2015, at approximately 8:15 p.m., TT1 placed an outgoing call to TT2, a telephone being used by Jose ANDUJAR, identified as a mid-level manager with this heroin DTO. The following conversation occurred between Mark GONZALEZ using TT1 and ANDUJAR in its entirety:

ANDUJAR: Hello

GONZALEZ: Hello, do you think I could close about 9:30?

ANDUJAR: Laughs

GONZALEZ: Because they haven't called, they haven't called in in about two hours. The ones that call are asking if it's the same thing.

ANDUJAR: Laughs and says, I know, and they don't, I know and they don't go.

GONZALEZ: But I tell them the truth, that's what [Unintelligible] told me to say, the truth, that there was nothing good. I tell them what you told me to tell them perhaps in a week or two.

ANDUJAR: If you'd like you can come right now about 9...

GONZALEZ: What?

ANDUJAR: If you want close at whatever time you want.

GONZALEZ: Because it's been a while since they've called.

ANDUJAR: It's fine, whatever you want, I know how things are. They also call me and they ask me.

GONZALEZ: [Unintelligible] Okay

[End of Call]

Based on your affiant's experience with this investigation, your affiant believed that GONZALEZ, a street level heroin dealer, asked permission from ANDUJAR, a mid-level manager, if he could stop selling for the night, "do you think I could close about 9:30?" GONZALEZ complained that he had not received any calls from the customers due to the poor quality of their recent supply that your affiant believed was obtained recently by Daniel MOLINA-RIOS in New York City. ANDUJAR conceded and told GONALEZ, "It's fine,

whatever you want, I know how things are. They also call me and they ask me." Finally, your affiant believed that ANDUJAR was well aware of the problem and had told GONZALEZ to advise his customers, "I tell them what you told me to tell them perhaps in a week or two." Based on this statement, your affiant believed that the DTO will be re-supplied with a better quality of heroin with the next week or two.


### JOSE ANDUJAR (MID LEVEL MANAGER) and Juan OLIVERIAS-ARBELO a/k/a Mikey (STREET LEVEL DEALER)

54.     On April 6, 2015, at approximately 7:23 p.m., TT1 received an incoming call from TT2, a telephone being used by Jose ANDUJAR.  During this call, Juan OLIVERIAS-ARBELO a/k/a Mikey using TT1 and ANDJUAR had the following conversation in its entirety:

> MIKEY: Hello cousin.
>
> ANDUJAR: Hey Pri, Do you think that four *cuadritos* (little squares) are going to be enough for today?
>
> MIKEY: What?
>
> ANDUJAR: Four *cuadritos* (little squares). Is that alright?
>
> MIKEY: Yes
>
> ANDUJAR: Do you think that all four *cuadritos* (little squares) *will be gone* today?
>
> MIKEY: I do not know. [Unintelligible] of what you gave me.
>
> ANDUJAR: Do you still have all that I gave you?
>
> MIKEY: No, it's gone already.
>
> ANDUJAR: Are people still calling you?

MIKEY: No. I have one...

[End of Call]

Based on your affiant's experience with this investigation, your affiant believed four "cuadritos" (little squares) that ANDJUAR and MIKEY discussed, represented "four bundles or 40 bags" of heroin.   Furthermore, your affiant believed that MIKEY sold all four "cuadritos" that ANDUJAR supplied him to his heroin customers.

55.   On April 13, 2015, at approximately 3:38 p.m., TT1 being used by Juan OLIVERIAS-ARBELO a/k/a Mikey placed an outgoing call to TT2, a telephone used by Jose ANDUJAR.  The following Spanish conversation occurred in its entirety:

OLIVERIAS-ARBELO to ANDUJAR

[SPANISH CONVERSATION]

ANDUJAR: Hello cousin.

OLIVERIAS-ARBELLO: Hello. Look, minus 50 of one finger for.......hmmm, a hand of mine.

ANDUJAR: All good.

OLIVERIAS-ARBELLO: All good? Did she call you?

ANDUJAR: Yes.

OLIVERIAS-ARBELLO: Okay, all good, alright. This is slow right?

ANDUJAR: How many do you have left, huh?

OLIVERIAS-ARBELLO: Huh?

ANDUJAR: How many do you have left, a lot?

OLIVERIAS-ARBELO: Well...No, I got one ticket and I'm missing one finger, six...[Unintelligible]

ANDUJAR: Okay brother.

OLIVERIAS-ARBELO: All is good. Alright cousin.

[End of Call]

Based on your affiant's experience with this investigation, your affiant believed that when OLIVERIAS-ARBELLO told ANDUJAR, "Look, minus 50 of one finger for.......hmmm, a hand of mine and Well...No, I got one ticket and I'm missing one finger," they discussed a quantity of heroin that they have left to distribute to their customers. Furthermore, your affiant believed that "one finger" is equivalent to 10 bundles (100 bags of heroin.)

### JOSE ANDUJAR (MID LEVEL MANAGER) and HECTOR CARATTINI a/k/a Lagrima (STREET LEVEL DEALER)

56.     On April 21, 2015, at approximately 1:54 p.m., TT1 received an incoming call from TT2, a telephone used by Jose ANDUJAR. The following conversation occurred in Spanish between Hector CARATTINI who used the TT1 and ANDUJAR:

Hector CARATTINI

Jose ANDUJAR

[SPANISH CONVERSATION]

CARATTINI: Hello.

ANDUJAR: How much you got left?

CARATTINI: Huh?

ANDUJAR: How much you got left.

CARATTINI: More than half finger. I am starting the other one now.

ANDUJAR: Huh?

CARATTINI: I am starting the other one, the second.

ANDUJAR: Come over this way, because I want the money that's left, [Unintelligible] the finger that's left there.

CARATTINI: I got four at home and carry three right now. Seven..... Did you hear me?

ANDUJAR: Huh?

CARATTINI: I got seven squares left.

ANDUJAR: Ok, bring me a square of a finger so you will have the four left from over here.

CARATTINI: Want me to come?

ANDUJAR: Yes, bring me a square of a finger so you have four left for the next person that is working.

CARATTINI: Alright.... let me go here.......

(call waiting )

CARATTINI: Hello?

[End of Call]

Based on your affiant's experience with this investigation, your affiant believed that CARATTINI, a street level dealer and ANDUJAR, a mid-level manager for this DTO discussed quantities of heroin when they refer to "fingers" and "squares." Your affiant believed that a "finger" is 10 bundles of heroin (100 bags) and a "square" is one bundle (10 bags). Furthermore, your affiant believed that CARATTINI, Michael PEREZ, Juan OLIVERIAS-

ARBELO a/k/a Mikey and Mark GONZALEZ are street level dealers, and alternated days when they distributed heroin to their customers as evident when ANDUJAR said, "Yes, bring me a square of a finger so you have four left for the next person that is working."

### ORLANDO RIOS a/k/a Fifo (MANAGER) and HECTOR CARATTINI a/k/a Lagrima (STREET LEVEL DEALER)

57.     On May 16, 2015, at approximately 3:31 p.m., TT1 received an incoming call from (716) 381-0131, a telephone used by Orlando RIOS a/k/a Fifo.  The following conversation occurred in its entirety in Spanish between RIOS and Hector CARATTINI who used TT1:

Orland RIOS

Hector CARATTINI

CARATTINI: Hello.

RIOS: How is that going?

CARATTINI: Little by little.  Just starting a new one now.

RIOS: Starting? OK

[END OF CALL]

Based on your affiant's experience with this investigation, your affiant believed that RIOS, an upper level manager with this DTO, contacted CARATTINI, a street level dealer, to check on his status to see how the heroin sales were going.  When CARATTINI said, "Little by little" he referred to the amount of bags he had sold to his heroin customers.  Your affiant further believed that when CARATTINI advised, "Just starting a new one now" he is letting RIOS know that he has sold the heroin he had and had replenished his supply.

## ORLANDO RIOS a/k/a Fifo (MANAGER) and MICHAEL PEREZ (STREET LEVEL DEALER)

58.     On May 19, 2015, at approximately 11:04 a.m., TT1 received an incoming call from (716) 381-0131, a telephone used by Orlando RIOS a/k/a Fifo.   The following conversation in Spanish occurred between Michael PEREZ using TT1 and RIOS:

  Orlando RIOS a/k/a Fifo

  Michael PEREZ

  PEREZ: Hello.

  RIOS: Hello. Who is this Hector (Lagrima)?

  PEREZ: No. "papi"

  RIOS: Oh. Look, what you got left?

  PEREZ: No "papi", [UNINTELLIGIBLE] I don't know, this is slow.

  RIOS: How much you got left?

  PEREZ: Like, like one full finger and three squares, four.

  RIOS: Ok.

  PEREZ: Almost, a finger and some. "papi"

  RIOS: Ok.

  PEREZ: Alright.

  [End of Call]

Based on your affiant's experience with this investigation, your affiant believed that RIOS, a manager with this DTO, inquired how much heroin PEREZ, a street level dealer, had left. PEREZ stated that he had, "Like one full finger and three squares." Furthermore, your affiant believed that one "full finger" is ten bundles (100 bags) and "three squares" is three bundles (30

bags). Finally, your affiant believed that this DTO is distributing 200-300 bags of heroin daily to their customers mainly on Buffalo's West Side.

## STREET LEVEL DEALERS and CUSTOMER

### KRISTIE BONCORE

59.     Based on information obtained during the investigation, including surveillance, intercepted conversations, and information from other law enforcement agencies, it has been determined that KRISTIE BONCORE ("BONCORE") is an associate of Hector CARATTINI a/k/a Lagrima, Michael PEREZ, Juan OLIVERIAS-ARBELO a/k/a Mikey and Mark GONZALEZ ("Street Level Dealers"), had purchased heroin from them, and/or has facilitated other narcotics transactions. CARATTINI, PEREZ, OLIVERIAS-ARBELO and GONZALEZ obtained their heroin from Jose ANDUJAR, Orlando RIOS and Danny MOLINA-RIOS and then distributed the narcotics to a network of customers and/or associates, and the following intercepted calls and events reflect BONCORE'S role in this narcotics conspiracy.


60.     On April 20, 2015, at 1:39 p.m., TT1 received an incoming call from (716) 381-2980, a phone used by Kristie BONCORE. Juan OLIVERIAS-ARBELLO a/k/a Mikey used TT1 and talked to BONCORE who said she needed "15" and is on Carolina and Prospect on the corner. BONCORE said she is in the back seat of a black Jetta. OLIVERIAS-ARBELLO agreed to meet BONCORE.


61.     On April 20, 2015, at 1:47 p.m., TT1 received an incoming call from (716) 381-2980, a phoned used by Kristie BONCORE. Juan OLIVERIAS-ARBELLO a/k/a Mikey used

TT1 and talked to BONCORE.  BONCORE wanted to know if OLIVERIAS-ARBELLO can hurry up, she has to get going because her probation officer called her and they are coming to her house.  BONCORE told OLIVERIAS-ARBELLO she needed to hurry up to get home and hide her weed.  OLIVERIAS-ARBELLO asked BONCORE how many she needed. BONCORE wanted "15" she is at Carolina, in a black car.

Based on your affiant's experience with this investigation, your affiant believed that BONCORE met OLIVERIAS-ARBELLO at Carolina and Prospect Streets, Buffalo, NY and purchased "15" bags of heroin from him.  Your affiant believed that BONCORE "middled" a heroin deal, in particular when she said she is in the back seat of the black Jetta.  Your affiant believed that the individuals that BONCORE dealt with were in the front seat of the Jetta. Furthermore, your affiant believed that BONCORE is presently on probation in Erie County from a previous criminal conviction and was concerned that her probation officer upon a home visit will discover marijuana that BONCORE had at her residence.

62.     On May 1, 2015, at 11:58 a.m., TT1 received an incoming call from (716) 381-2980, a telephone used by Kristie BONCORE.  The following conversation occurred in its entirety between BONACORE and Hector CARATTINI using TT1.

CARATTINI: Hello.

BONCORE: Hey, where are you? I am coming now.

CARATTINI: Come to, I need you to pick me up on Farmer and Tonawanda.

BONCORE: Farmer and Tonawanda? Ok, Hey when you are in the car don't mention how much I am getting and how much each bag is, I am making money off him and I don't want him to know any of the prices.

CARATTINI: Alright.

BONCORE: I am going to pick you you and get out of the car and walk down the street, and pretend you don't know any of the prices. Ok. I am going to need five and half.

CARATTINI: Huh?

BONCORE: I am going to need five and half bundles. He thinks I am only getting five bundles and he thinks it's more than it is. So like I said don't mention prices even if he ask. I am on my way to get you. Sorry where in Tonawanda?

CARATTINI: Yeah, Tonawanda and Farmer.

BONCORE: Ok. I will see you in a few. Ok.

Based on your affiant's experience with this investigation, your affiant believed that BONCORE "middled" a transaction for an unknown male and used the UM's money to purchase "5 ½" bundles of heroin from CARATTINI, a street level dealer with this DTO.  Furthermore, your affiant believed that BONCORE purchased the heroin from CARATTINI at one price and charged the UM a higher cost to benefit herself.

63.    During the course of this Title III investigation, BONCORE was intercepted a total of 161 times (pertinent calls) over TT1 where it was estimated she purchased approximately 307 bags of heroin.  Your affiant believed that BONCORE then redistributed or "middled" a portion of the heroin she purchased.

**WHEREFORE**, based upon the information set forth in this affidavit, your deponent submits that there is probable cause to believe that in the Western District of New York, the individuals set forth in paragraph four of this affidavit have engaged in a conspiracy to possess with intent to distribute heroin, Schedule I controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B) and 846.

It is further requested that because of the sensitive nature of information contained herein, this affidavit be filed under seal.

CLINTON CALLOWAY, Jr
Task Force Agent
Drug Enforcement Administration

Sworn to before me this
_28th_ day of September, 2015

JEREMIAH J. McCARTHY
United States Magistrate Judge
Western District of New York

31